1:09CV0275 Sec P    no.1

U.S. _____ COURT
WESTER_ _____ OF LOUISIANA
R_____

FEB 1 7 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

A COMPLAINT UNDER THE CIVIL RIGHTS ACT
42 U.S.C. section 1983

UNITED STATES DISTRICT COURT
Western _____ DISTRICT OF LOUISIANA

Darrel Grant LeDee _____                    326719
                                               INMATE(DOC)NUMBER
_____
_____

(Enter above the full name of each
Plaintiff in this action.)

VERSUS

Timothy Wilkinson, Angel A. Martin, Nicole Walker, Unit Mgr. Hardwell, Case Mgrs.
Triplette, L. Shephard, Pat Thomas, Mona Heyse, Linda Steele, Linda Ramsay,
Melody Turner, Lisa Coleman, RNA. Woods, Joanne Smith, Dr. Pacheco, Winn Corr-
ectional Center, Corrections Corporation of America, CCA-Contracted Medical Provider,
(Enter above the name of each      James LeBlanc, Richard Stalder, Louisiana Dept. of Corrections
Defendant in this action.)

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. section 1983

This packet includes two copies of a complaint form and one copy of the pauper affidavit.

IF YOU ARE A PARISH PRISONER, you must file an original and a copy of your
complaint for each defendant you name. For example, if you name two defendants, you
must file the original and two copies of the complaint. You should also keep an additional
copy of the complaint for your own records.

IF YOU ARE A D.O.C. PRISONER, you must file an original and one copy of your
complaint. If the defendants are still employed by the Department of Public Safety and
Corrections, only one service copy is needed. Otherwise, you must supply a copy of the
complaint and the service address for each defendant no longer employed by the
Department of Public Safety and Corrections.

All copies of the complaint must be identical to the original

The names of all parties must be listed in the caption and in part III of the complaint
exactly the same.
   In order for this complaint to be filed, it must be accompanied by the filing fee of $150,00.
In addition, the United States Marshall will require you to pay the cost of serving the
complaint on each of the defendants.

1

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. For this purpose, a pauper affidavit is included in this packet. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. **THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS.</u>**

When you have completed these forms, mail the original and copies to the Clerk of the United States District for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    **Previous Lawsuits**

A. Have you begun other lawsuits in state or federal court dealing with the same Facts involved in this action or otherwise relating to your imprisonment? Yes ( ✓ ) No (   )

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is More than one lawsuit, describe the additional lawsuits on another piece of paper, Using the same outline.)

1.  **Parties to this previous lawsuit**
Plaintiff(s): ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
Dorrel Grant LeDee

Defendant(s): Lt. Lone, Timothy Wilkerson, State of Louisiana

2.  **Court (if federal court, name the district; if state court, name the parish):** U.S. District Court, Western District of Louisiana (Alexandria)

3.  **Docket number:** 1: 06 - cv - 01232 - DDD - JDK

4.  **Name of judge to whom case was assigned:** Honorable Dee D Drell
Referred to: Magistrate Judges James D. Kirk

5.  **Disposition (for example: Was the case dismissed? Was it appealed? Is it still Pending?):** Dismissed

6.  **Date of filing lawsuit:** 07/19/06
7.  **Date of disposition:** 11/03/06

C. Have you had any previously filed federal lawsuits or appeals, whether or not Related to the issues raised in this complaint, dismissed by any federal court as

2

Frivolous, malicious, or for failure to state a claim for which relief can be granted?
Yes ( ✓ )                    No ( )

If your answer is yes, list the civil action numbers and the disposition of each case.
You must identify in which federal district or appellate court the action was brought.

1:06-cv-01332-DDD-JDK
Failure to State a Claim

II. Place of present confinement: Winn Correctional Center

A. Is there a prisoner grievance procedure in this institution?
Yes ( ✓ )                    No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance
Procedure?
Yes ( ✓ )                    No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raise
In this complaint were addressed. WNC-2007-1510, WNC-2008-646, WNC-2008-288
WNC-2008-1408, WNC-2008-82, (WNC-2008-1409-Lost Property Claim#08-081)
2. What steps did you take? I filed A.R.P.'s which were either denied
or rejected and then i appealed them to the Second Step in which
they were denied

3. What was the result? They were either denied or rejected

D. If your answer is No, explain why not: _____

III. Parties
(In Item A below, place your name in the first blank and place your present address
In the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s) Darrel Grant LeDee
Address Winn Correctional Center-Dogwood C-2, P.O. Box 1260, Winnfield, La. 71483-1260
In Item B below, place the full name of the defendant in the first blank, his official
Position in the second blank, and his place of employment in the third blank. Use
Item C for the names, positions, and places of employment of any additional
Defendants.

B. Defendant Timothy Wilkinson                              is employed as
Warden                                        at Winn Correctional
Center             .
C. Additional Defendants: Angel A. Martin, Warden Winn Correctional Center;
Nicole Walker, Chief of Unit Mgmt Winn Correctional Center; Ms. Hardwell,
Housing Unit Mgr. Winn Correctional; Mrs. Ms. Triplette, Case Mgr. Winn
Correctional Center; L. Shepherd, works at another prison; Pat Thomas,
Medical Director Winn Correctional Center; Monya Heyse and Linda
Steele, A.R.P. Screening Officers Winn Correctional Center; Linda Ramsay,
A.R.P. Reviewing officer Louisiana Dept. of Corrections; Melody Turner,
Managing Director Division III Corrections Corporation of America

**IV. Statement of Claim:**

State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. <u>Do not give any legal arguments or cite any cases or statutes</u>. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Staph infection: On 07/14/06, plaintiff went to Dr. Pacheco-(Defendant) for Staph infection (Boil). injury went untreated. On 07/05/07 Plaintiff was seen by (Defendant)- Joanne Smith for staph infection (Boil) in his private area. She scheduled plaintiff to see (Defendant)- Dr. Pacheco on 07/06/07. On 07/06/07, (Defendant)- Dr. Pacheco again denied plaintiff treatment. Plaintiff informed (Defendants)- Dr. Pacheco and Joanne Smith on these two visits and on his Sick Call Request dated 07/05/07 that this Staph infection (Boil) was hurting him real bad and that he was in severe pain, but his cries were ignored. The injury went untreated. On 10/16/07, plaintiff filled out a Sick Call Request; to see (Defendant)- Dr. Pacheco to receive treatment for a Staph infection (Boil) on his leg. (Defendant)- Joanne Smith scheduled plaintiff to see (Defendant)- Dr. Pacheco

**V. Relief:**

<u>State briefly what you want the court to do for you.</u> Make no legal arguments. Cite no Cases or statutes. Attach no exhibits. Grant plaintiff a Temporary Restraining Order "(TRO)" so that he can receive outside Medical Treatment to find out what he's infected with and so that he can receive Medical Treatment for this infection. Grant plaintiff a Preliminary injunction so that when

**VI. Plaintiff's Declaration:**

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted,

unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

Signed this __10th__ day of __February__, 200 9 .


_Darrel D. LeDee_

_____
**Signature of plaintiff(s)**

5

Continue From Pg. 3

## III. Parties

C. Additional Defendants: Lisa Coleman, LPN Winn Correctional Center; A. Woods, RN; Winn Correctional Center; Joanne Smith, RN Winn Correctional Center; Dr. Pacheco, Doctor Winn Correctional Center; Winn Correctional Center, Corrections Corporation of America; CCA-Contracted Medical Provider; James LeBlanc, Secretary Louisiana Dept. of Corrections; Richard Stalder, Secretary Louisiana Dept. of Corrections-Retired; Louisiana Dept. of Corrections, Michelle Smith-Kennedy, Mr. Lewis

Continue From Pg. 4

Denial of Medical Treatment and Medical Care

iv. Statement of Claims: on 10/19/07. On 10/19/07, (Defendant) - Dr. Pacheco looked at the infection on plaintiff's leg and said if it gets bigger come back and see him. This was not the first time plaintiff went to see (Defendant) - Dr. Pacheco for this same infection on his leg. (Defendant) - Dr. Pacheco still did not do anything and denied plaintiff treatment. Again, plaintiff informed (Defendants) - Joanne Smith and Dr. Pacheco how this infection (Boil) was hurting him real bad and that he was in severe pain; but again his cries were ignored and the injury went untreated. It hurted real bad and it hurted when plaintiff walked. On 10/29/07, plaintiff filled out another Sick Call Request to receive Medical Treatment for the same infection on his leg that he went to see (Defendant) - Dr. Pacheco for on 10/19/07. He was not seen by (Defendant) - Dr. Pacheco, but was seen by (Defendant) - Joanne Smith. Again, the injury went untreated. She told plaintiff that nothing could be done. (Defendant) - A. Woods was in this room. She said the same thing. (Defendant) - A. Woods said the infection was a Spider-bite. Plaintiff told (Defendant) - A. Woods that this infection was not a Spider-bite because he had this same infection on 07/14/06, in the same exact area and it just went away. In 2007, it just reappeared in the same exact area but went away again; then it reappeared again and this time it had got worse and it didn't go away. Plaintiff then told (Defendant) - A. Woods that's how he knew the infection was not a Spider-bite. Plaintiff also told (Defendant) - A. Woods that a Spider won't bite you in the same place twice. (Defendant) - A. Woods then told plaintiff that the infection on his leg was a Hair infection. Plaintiff then told (Defendant) - A. Woods; "How could this infection on his leg be a Hair infection, when he doesn't have any hair in that area on his leg/thigh?"

4

Plaintiff then told (Defendant) - A. Woods; "On first you said the infection was a Spider-bite, now you're saying it's a Hair infection!" (Defendant)-A. Woods didn't respond back to plaintiff's line of questioning. Plaintiff then told (Defendant) Joanne Smith that (Defendant) Dr. Pacheco said the infection was a Cist and (Defendant) - A. Woods is saying two different things; who's right? (Defendant)- Joanne Smith told plaintiff that (Defendant)- Dr. Pacheco was wrong and (Defendant) - A. Woods was right. (Defendant)-Joanne Smith, then released plaintiff and did not schedule plaintiff for a follow-up check up to see (Defendant)- Dr. Pacheco even though she knew that plaintiff was in severe pain because he advised her of this. Again, the injury went untreated. On 10/31/07, plaintiff went to his Case Mgr. (Defendant)- L. Shephard and advised her of his medical problem. He told her that he was in terrible pain and that medical was denying him treatment. He asked his Case Mgr. for her help. She told him that she would talk to her Supervisor (Defendant)- Nicole Walker about this. On 10/31/07, later on that day, plaintiff's Case Mgr. (Defendant)- L. Shephard called him into her office and advised him that she did'nt talk to (Defendant)- Nicole Walker yet because she was in a meeting; but as soon as she would get out of the meeting she would talk to her. (Defendant)- L. Shephard then asked plaintiff if he would let her look at his leg. He let her look at it and she said that it looked real bad and that it was not a Spider-bite. (Defendant)- L. Shephard said that she would talk to the Warden (Defendant)-Timothy Wilkinson about this infection because it looked terrible and that plaintiff needed medical treatment. On 11/01/07, plaintiff ran into his Case Mgr. (Defendant)- L. Shephard on DogWood Walk - (DogWood is the Unit that Plaintiff resides in. A Honor Unit), and asked her if she talked to her Supervisor (Defendant)- Nicole Walker and the Warden (Defendant)- Timothy Wilkinson yet?

5

she said no. Plaintiff told her that he was hurting real bad, in terrible pain and that he was trying his hardest to work with the Medical Staff and Regular Staff but they were not helping him. (Defendant) - L. Shephard told plaintiff to do what he had to do. Plaintiff could of took that statement to mean do anything. She did not try to help plaintiff and by her making that statement she wasn't concerned about plaintiff's welfare and health. On 11/01/07, plaintiff was hurting so bad. He was in so much pain. He did'nt think he could take the pain anymore. The night before he wanted to kill his self because of the pain to make it stop. Plaintiff ran into his Case Mgr. (Defendant) - L. Shephard again on this day while she was working DogWood Floor. (DogWood Floor is inside the Unit that Plaintiff resides in). He told her that he was hurting so bad to where he could barely walk. Plaintiff had tears in his eyes. (Defendant) - L. Shephard just looked at plaintiff and did not say anything. It hurted so bad for plaintiff to even walk or sit down. He could'nt sleep that night because he was in so much pain. On 11/01/07, the infection on plaintiff's leg popped open and begin to drain. The infection was leaking Puss and Blood so bad also staining his underclothes to where he had to make his own bandages. The infection had such a terrible ordor like plaintiff never smelled before. Plaintiff had to put tissue on the wound and tape the tissue on his leg with scotch tape and he had to cut a pillow case in two and tie it on his leg to hold the tissue in place. He did this at 4:45 p.m. He was in so much pain to where he could barely walk. Plaintiff went to Kairos later on that evening - (Kairos is a Religious Organization from outside the prison that holds services inside the prison). His Sponsor (A Sponsor is a Member of Kairos that's assigned to an inmate) - noticed that plaintiff was in terrible pain. He asked plaintiff what was wrong and plaintiff told him. He told plaintiff that he couldn't get involved but he would pray for plaintiff. He and plaintiff prayed together and he also told

6

plaintiff that when he would leave the prison that night and go back to the church he would ask his wife and the rest of the Members to pray for plaintiff. After Kairos was over with that night at 9:00 p.m, plaintiff builded up his nerves and courage to sneak down to the infirmary taking a chance of getting a write-up to get some bandages and medical attention. When plaintiff arrived at the infirmary he was threatened by the Correctional Officer that was working the infirmary walk that he would be written-up because he did not have a Dressing Change Pass -(this means if you have some kind of open wound etc., Medical cleans it and dresses it with new bandages this is done every night). Plaintiff told the C/O what the problem was and that she should not write him up because he had a serious medical need. She wanted to see plaintiff's injury. Plaintiff showed her his leg. She said that it looked terrible. She let plaintiff stay at the infirmary with no infractions. The Nurse that was on duty that night dressed the wound. When he took the bandage off of plaintiff's leg that plaintiff made it was soaked in puss and blood. The infection would not stop bleeding. The Nurse stop draining the wound and said that he wasn't going to drain the wound all the way. After the Nurse looked at the wound he wound he tried to say the same thing that -(Defendants)- A. Woods, Dr. Pacheco and Joanne Smith were saying; "The infection was a Spider-bite!" Plaintiff told him the same same thing that he told the above three Defendants, but he didn't want to hear that. He kept on insisting that the infection was a Spider-bite. He then gave plaintiff some bandages and a Dressing Change Pass. Plaintiff asked him to please give him something for pain but he would'nt. He told plaintiff to take some asprin. Plaintiff told him that he was already doing that but the pain would not stop. The Nurse still told plaintiff to take asprin. On 11/02/07, plaintiff was up all night because he couldn't sleep because he was in so much pain all night. He thought that since the wound opened up that he was

7

not going to be in pain anymore. When he went to take his shower he changed the bandage it was soaked in so much puss and blood. Plaintiff still has a scar today over a year later on his leg where the infection was. When plaintiff changed the bandage it hurted even more to walk. Plaintiff even had problems getting to the Chow Hall. On 12/09/07, plaintiff woke up in the morning and he was hurting in his private area. Right there, he knew what the problem was. The MRSA Staph infection came back Plaintiff knew exactly where to look because every time the infection comes back it appears in the same area in the exact same spot. It reappeared for the 4th or 5th time in his private area. That's how he knows that he's infected with the MRSA Staph infection, and that the disease/germ is in his Bloodstream because it comes and goes. On 12/10/07, plaintiff was hurting even more than the day before. When he took a shower, he checked his private area for the infection. It grew a little bit bigger than the day before and it was softer and more tender. He hoped and prayed that these people would give him medical treatment this time so he would'int have to suffer in pain like before. On 12/10/07, plaintiff sent (Defendant)-Pat Thomas, Medical Director a Request Form asking for her help advising her about his Staph infection in his private area. He told her that it hurts and is causing him pain. Plaintiff also told (Defendant)-Pat Thomas that he needs to see the MD and go to the Hospital because he is infected with the MRSA Staph Infection. Plaintiff told (Defendant)-Pat Thomas that he was worried and scared to death about the safety and welfare of his health because people are dying because of this infection. Plaintiff told (Defendant)-Pat Thomas that it is hard for him to sleep at night because of this and that he was having nightmares about this. On 12/10/07, plaintiff sent (Defendant)-Angel A. Martin, Deputy Warden a Request Form informing her that he is infected with the MRSA Staph infection and that Medical is denying him Medical treatment. He told her that he needs to go to

8

the Hospital, that he is in pain and he needs medical attention. Plaintiff asked (Defendant)- Angel A. Martin for her help because she has the authority to help him. He begged her to help him. Plaintiff (Defendant)- Angel A. Martin that he was scared to death about the safety and welfare of his health. He told her people are dying because of this infection. Plaintiff told (Defendant)- Angel A. Martin that it was hard for him to sleep at night because of this and that he was having nightmares about this. (Defendant)- Angel A. Martin did'nt do anything. She did'nt even look into the problem. She threw the problem on the Medical Director, (Defendant)- Pat Thomas. (Defendant)- Pat Thomas did'nt do any thing. She did'nt even look into the problem. She threw the problem on (Defendant)- LPN Lisa Coleman. (Defendant)- Lisa Coleman said that plaintiff was seen in Sick Call. Plaintiff was seen in Sick Call but he did'nt recieve any treatment and the problem was getting worse. That's why plaintiff was asking for (Defendant)- Angel A. Martin's help. On 12/11/07, plaintiff filled out a Sick Call Request for the infection in his private area, to see the MD and to go to the Hospital for treatment. Plaintiff stated that he was in pain and hurting and that he had the MRSA Staph infection that's in his Bloodstream. On 12/11/07, plaintiff was still hurting as the day before. He did'nt go to sleep until 1:37 a.m. He wished it would stop hurting so that he could get some real sleep. He Knew that he might have a problem with this Infection (Boil). When he went to Breakfast that morning it hurted as he walked. Then it hurted as he walked back from the Chow Hall. On 12/12/07, plaintiff went to Sick Call. (Defendant)- Dr. Pacheco looked at the infection and said it was a Cist. He said the same thing about the infection on 10/16/07. Then when plaintiff proved to him that the infection was'nt a Cist, he said that the infection was a Spider-bite. On 07/14/06, plaintiff seen (Defendant) Dr. Pacheco for the same thing and he said the infection was a Hair-Infection. The infection

9

went away a few months later which would be in December the infection come back, now (Defendant) - Dr. Pacheco was saying the infection was a Cist. Dr. Pacheco Knew that plaintiff was in pain, that he was and is infected with the MRSA Staph infection and that it had invaded his Bloodstream and he did'nt and still has not given plaintiff something for pain, treatment or send him to the hospital. Plaintiff again told (Defendant) - Dr. Pacheco that he was in serious pain. Dr. Pacheco said that there was nothing he could do about that. Dr. Pacheco scheduled plaintiff to come back and see him in a few weeks to remove the Cist. Plaintiff should not of had to suffer in pain for a few weeks before he receives Medical treatment. This is not the First time that plaintiff had this problem in different areas on his body that (Defendant)- Dr. Pacheco diagnosed as a Cist. if plaintiff Keeps on having this problem so often that should tell (Defendant) Dr. Pacheco that plaintiff needs to go to the Hospital and get Medical treatment. Plaintiff could really feel the pain when he walked and when he stood still. He should'nt had to suffer like that. (Defendants) - Joanne Smith and Dr. Pacheco told plaintiff to put a towel on the Infection(Boil). they always tell plaintiff that and it doesn't any good or stop the pain." what Kind of Medical treatment is that?" On 12/13/07, plaintiff was hurting real bad even worse than the day before. He felt a sharp pain. He was taking all the asprins that he could get his hands on eating them like candy and they were not working. On 12/14/07, plaintiff did'nt want to go through this pain any more. He was thinking of a way to make it stop. He thought about about Killing his self. He was hurting just like when he had the Infection on his leg. He hoped and prayed for the pain to go away. On 12/15/07, plaintiff was hurting just like the day before. He was worried and scored to death because he had another nightmare about this infection that night. if this infection reaches your spinal fluid death can occur within

24-hours. That's why plaintiff is so worried and scared to death and why he is so depressed, stressed out and messed up mentality. These defendants knows this and refuses to do anything about it or give plaintiff needed treatment. On 12/16/07, plaintiff was hurting even more now. He did'nt get any sleep that night. This medical situation was really stressing him out and depressing him. He did'nt eat anything at all that day because he was so stressed and depressed when plaintiff gets depressed he can't eat. He decided if he would be feeling the same way the next day he would send a RequestForm to Mental Health. On 12/17/07, plaintiff was hurting real bad. He was having the exact pain that he had when he had the infection on his leg. It was hard for him to really walk, or even sit down. He did'nt get any sleep that night and still had'nt ate anything as of yet, because he was so depressed. This was the 2nd. day he did not eat. He sent a RequestForm to Mental Health because he could'nt take the pain anymore and this Medical situation was about to drive him crazy and make him kill his self. He did'nt know what to do to make the pain stop. He figured the only way the pain would stop is if he would kill his self, but he really did'nt want to kill his self because he was afraid of going to hell. He tried killing his self a few times before and he wasn't afraid to try it again. But it was getting to the point to where he did'nt care anymore. He just wanted the pain to stop. On 12/18/07, plaintiff still did'nt get any sleep that night. Well, he got a little sleep. He fell asleep for about two hours. He had still not seen Mental Health yet. He still did'nt have the desire to eat and he did'nt care about eating anymore. Plaintiff decided to send (Defendant) Nicole Walker a RequestForm asking for her help because she has the authority to help him. Plaintiff decided to drain the Boil on his own to make the pain stop. On 12/19/07, plaintiff drain the infection (Boil) and it went down a little bit and it was not hurting as much; but he was still hurting a little bit. It felt a whole lot better though from the previous pain. He finally got some sleep

14

and he finally ate something. He forced his self to eat something off of one of his trays. He was still not eating every meal though because he was still depressed. Plaintiff received his Request Form back from Mental Health, Michelle Smith-Kennedy. She said she would schedule plaintiff and that it would be two weeks before she would see him. Plaintiff felt that he would probably kill his self by then; but he got a Call-Out to go and see her the next day. On 12/19/07, plaintiff talked to (Defendant)- Nicole Walker. She asked him if everything was alright because of the mood he was in. Plaintiff asked her if she received his Request Form that he sent her about his Medical Condition. She said no! She asked plaintiff, "what was it about?" Plaintiff told her about his staph infection and that he had the MRSA Staph Infection. He told her that he was hurting real bad, in severe pain and that Medical is denying him medical treatment. Mrs. Walker got on the phone to call (Defendant)- Lisa Coleman because she said Mrs. Coleman would help him. Mrs. Coleman was not there. So, plaintiff waited to see if Mrs. Walker was going to follow up on Mrs. Coleman for him. On 12/20/07, (Defendant)- Nicole Walker did not follow up on (Defendant)- Lisa Coleman for plaintiff. On 12/20/07, plaintiff was still hurting and in pain like the day before. He decided to drain the infection (Boil) a little bit more to relieve the pain the infection (Boil) was the same size as it was the day before. On 12/22/07, the infection (Boil) went away and plaintiff was not hurting that much anymore. On 12/24/07, plaintiff received a Call-Out Pass to go see the MD (Defendant)- Dr. Pacheco to have what he claims to be a Cist removed -(the infection (Boil) on plaintiff's leg), but that was not necessary because the infection was gone. Plaintiff told (Defendant)- Dr. Pacheco that he needed to go to the hospital and that he should not have had to suffer in pain that long with no Medical treatment. On 01/02/08, plaintiff received a Call-Out Pass to see Dr. Wheat of Mental Health because of the stress and Depression that

12

this infection is causing him and because of the stress and Depression the Sexual Assault issue - (which will be filed with this Court in July) is causing him. Dr. Wheat put plaintiff on two different types of medicine, now it has been increased to four different types of medication. On 09/10/08, plaintiff filled out a Sick Call for another infection in his private area in the same area in the same exact spot where he always gets the infection in his private area. He was hurting real bad. On 09/10/08, plaintiff went to the infirmary for the infection in his private area. (Defendant) - A. Woods examined plaintiff and said nothing was wrong with him. Plaintiff tried to direct Mrs. Woods to the spot where the infection was at but she would'nt listen and she really could'nt find the infection because she had gloves on that made it hard for her to find the infection and she really did'nt want to touch or feel on plaintiff which plaintiff doesn't blame her because plaintiff was embarrased too; but that's her job. Plaintiff was telling her it hurted in the area where the infection was to help her find the spot but she did'nt want to listen. Plaintiff went to Medical about a problem he's having losing weight in October. He can't remember the exact date and he lost his paperwork with the date on it and what was said and transpired on this visit due to all the medication Mental Health has him on. it's hard for him to function normally and stay focused because of this medication. He would have to file Discovery to get this date. Plaintiff asked (Defendant) - Dr. Pacheco to examine him and give him treatment for this infection in his private area. By this time it had spreaded to both sides. Plaintiff told Dr. Pacheco that he is in pain and needs treatment. Dr. Pacheco again told plaintiff the infections (Boils) were hair infections. The injuries again went untreated. Plaintiff is scared to fill out any more Sick Calls for this infection because its in his private area and

13

the only people that examines you are female nurses and they may think that plaintiff is only filling out these Sick-Calls so these nurses could touch on him in his private area, and they will put him on lockdown for that. He doesn't like these female nurses looking at his private area and touching on his private area. He asks them to let the MD do it because he's a male but they refuse too. On 01/29/09, plaintiff woke up in pain. He was hurting on the right side on the top of his head, his right ear, and the right side of his entire face. He had a migrane headache and his right eye was hurting. it hurted if he touched the right top side of his head, if he touched his right ear or stuck his finger in his right ear and it hurted when he swallowed, blow his nose or put his blue cap on his head. Plaintiff thought this was a Dental problem since he was already having a Dental problem so he told Dr. Engelson. Dr. Engelson said it was not and that he would let Medical know about this. On 01/30/09, plaintiff woke up again in serious pain from the infection (Boil) on his head. it was huge and red and on his pillow case is a stain from where it was leaking. You can imagine what plaintiff was going through with just having his gums stitched up and with this infection (Boil) on top of his head. On 02/01/09, plaintiff went to his Case Mgr. and informed her about the infection (Boil) on top of his head. He showed it to her. She said it looks bad and she saw it leaking puss and blood. She documenated this in plaintiff's file. On 02/02/09 plaintiff woke up in pain again. He went to chow for lunch to try and eat, but he couldn't. He saw his Case Mgr. on DogWood Walk and informed her about this. He told her that he was in pain, dizzy and had a migrane headache due to the infection (Boil). On 02/02/09, plaintiff had a meeting with the Medical Director (Defendant) - Pat Thomas. He told her and showed her the infection (Boil) on his head, but she refused to give plaintiff treatment. On

14

02/02/09, plaintiff could'nt endure this pain anymore. He went to the key officer Mrs. Willams and made a Medical Emergency. He had to show her his head. He showed it to her. The Nurse said that she saw a little blood and swelling. Plaintiff told her that he needs Medical treatment because he can't eat, or sleep. He told her that he is having migrane headaches, and his entire head hurts. She said that plaintiff could'nt see the MD today because he was too busy. She denied plaintiff treatment. When plaintiff got back to his unit, he drained the wound because he could'nt take the pain anymore.

Lost Property = On 03/28/08, (Winn Correctional/CCA/D.O.C. Officials) came and searched DogWood Unit including C-2 Tier, the Tier that plaintiff is housed in. All of plaintiff's belongings that was in his footlocker, which consisted of his Legal Work, Documents from different courts and his Bible Certificates were scattered between three different bunks and in the middle of the floor. The Tier "looked as though a Cyclone had hit [it]" and "if [the guards] had come in with one thought in mind and that being to completely tear the Tier apart." After the Shakedown was over with the guards made all the inmates stay in the t.v. room while they had inmates go down the isle with buggys and trash bags picking up all of the inmates belongings and personal property so that they could throw this property away. Most of plaintiff's property was lost. He could'nt find them. Descriptions of items Lost: 1) Writ Application filed in the Louisiana Supreme Court on Direct Review on Motion to Suppress, 2) Writ Application filed in the Louisiana Supreme Court on Post-Conviction, 3) Brief on Motion to Suppress filed in the Third Circuit Court of Appeals on Direct Review, 5) Third Circuit Notice of Judgment on 04/06/05 and 05/16/05,

6) Unpublished Judgment of the Court of Appeals denying Writs, along with a Copy of the Third Circuit's Notice of Judgment, 7) Suppression Hearing Transcripts, 8) Sentencing Transcripts 27th. Judicial District Court, 9) Boykin Transcripts 27th. Judicial District Court, 10) Police Reports 27th Judicial District Court, 11) Parts of Police Reports-15th. Judicial District Court, 12) Bill of Information 27th. Judicial District Court, 13) 27 Bible Certificates, 14) Academic Transcript From Bible College. The result of this investigation on this Lost Personal Property Claim by (Defendant)- Nicole Walker resulted in it being denied which was on 05/01/08. She stated; "Loss, if any, not the result of staff negligence. This is untrue. She knows that her subordinates were negligent. There's inmates on this same tier that lost property on this shakedown and CCA replaced it. On inmate lost two pair of Jeans, one pair of shoes and a radio and CCA replaced it. So, why couldn't plaintiff be compensated for his lost like the others. That's not including the percentage of the 1500 inmates on this compound that's property was lost, which was replaced by CCA; which will be found out in Discovery. (Defendant)- Nicole Walker also stated that the investigation has proved the claim invalid or unsubstantiated. Plaintiff can produce sworn statements to prove her otherwise. Plaintiff appealed Mrs. Walker's decision. On 09/23/08, plaintiff received the result of his appeal from (Defendant)- Melody Turner. She denied plaintiff's appeal. She said she supports the facility position. Other inmates were compensated for their loss, and the same thing happened with their loss. Why couldn't plaintiff be treated the same way and in a sense his lost property was more important and more valuable than theirs.

Denial of Mental Health Medication: On 01/07/08, plaintiff couldn't take his Mental Health Medication anymore because it upsets his stomach and

16

makes him dizzy and sometimes it makes him throw-up before he eats. Plaintiff sent (Defendant)-Michelle Smith Kennedy a Request Form concerning the situation. He explained to her the entire situation dealing with his medication. Plaintiff advised Ms. Kennedy that last year she issued him a pass so that he could eat before taking his medication because the Security Staff makes the inmates take their medication before they eat. Plaintiff told Ms. Kennedy that when he takes his medication before he eats it upsets his stomach, makes him dizzy and that he has already vomited twice. Plaintiff told Ms. Kennedy that the Pass she gave him is in his Medical File. He asked her to please give him a copy of his Pass that week. On 01/08/08, plaintiff really needed his medication because he was really stressed out and depressed and having all kinds of crazy thoughts. He couldn't eat and he didn't sleep at all that night. On 01/08/08, plaintiff received a response back from (Defendant) Ms. Kennedy regarding his Medical Pass. She didn't want to give plaintiff a copy. She put it off on Medical. She told plaintiff that he needed to talk to the Nurse at Pill Call about this (Pill Call is where the inmates go to take their Medication). She knew that these Nurses wouldn't help plaintiff. On 01/08/08, plaintiff ate a little bit so that he wouldn't starve his self, but he really didn't eat much and he couldn't really eat. He needed his medication. He only slept for two hours that night. On 01/08/08, plaintiff talked to one of the Pill Call Nurses like (Defendant)-Michelle Smith-Kennedy advised him to do. Her name is Mary Fobbs, the lady that issues out plaintiff's medication to him on her shift. Plaintiff told Ms. Fobbs what Ms. Kennedy said about his Medical Pass. Plaintiff talked to Ms. Fobbs in Dogwood Unit where plaintiff resides, when she was issuing out T.B. Shots that morning. She told plaintiff that she couldn't help him. On 01/08/08, plaintiff went to see (Defendant)- Nicole Walker. He told her about his Medical Pass situation. She called (Defendant)- Michelle Smith-

17

Kennedy and talked to her for plaintiff. They started arguing about the situation. Ms. Kennedy tried to throw the problem on Mrs. Walker. Ms. Kennedy tried to tell Mrs. Walker to call (Defendant)-Pat Thomas and talk to her about it. Mrs. Walker told Ms. Kennedy that's not her area. Mrs. Walker told Ms. Kennedy that Mental Health is her area so she needs to call Ms. Thomas and talk to her about it and that was the end of the conversation. Neither one of these two Defendants wanted to take the responsibility to help plaintiff and they have the authority to do so. Mrs. Walker told plaintiff that she couldn't make Ms. Kennedy do what she doesn't want to do, but Mrs. Walker could of talked to (Defendant) Pat Thomas or the Warden because she has the authority to do so. On that day plaintiff really needed his medicine because he thought that he was going to do something crazy. On 01/01/08, plaintiff sent (Defendant)-Pat Thomas another Request form about his Pass situation for his medicine. Plaintiff told Ms. Thomas that he is on Mental Health Medication. He told her that when he takes his medicine first which Security makes them (inmates) do before they (inmates) eat, the medicine upsets his stomach, sometimes he throws up and it makes him dizzy. Plaintiff told Ms. Thomas that he has a Medical Pass in his Medical File authorizing him to eat before he takes his medication. Plaintiff told Ms. Thomas that (Defendant)-Nicole Walker talked to (Defendant)-Michelle Smith-Kennedy about this and Ms. Kennedy said that plaintiff and Mrs. Walker needed to talk to her (Ms. Thomas). Plaintiff told Ms. Thomas that this is the same type of medicine that he was on the first time when he was issued his Medical Pass and he is taking the medicine the same time he was taking the Medicine before when he was issued the Medical Pass. Plaintiff told Ms. Thomas that he needs to take his medicine because he's having all kinds of crazy thoughts that are running through his head and he only ate once in three days. Plaintiff told Ms. Thomas that he is really depressed and stressed out, he doesn't have the

18

desire to do anything anymore and that he has not slept at all that night. On 01/10/08, plaintiff sent (Defendant)- Michelle Smith-Kennedy another Request Form about his Medical Pass situation for his medicine. He advised her that he talked to the Pill Call Nurses as she advised him too, but he was told that they couldn't help him. Plaintiff told Ms. Kennedy that he needs his medication and that all kinds of crazy thoughts are running through his head. He told her that he ate only once in three days, that he is really depressed and stressed out and that he doesn't have the desire to do anything anymore and that he has not slept at all that night. On 01/10/08, plaintiff received a response back from (Defendant)- Michelle Smith-Kennedy concerning the problem with his medication. She scheduled plaintiff to see her. Plaintiff forced his self to eat something that day. it wasn't much. He was so hungry. He was so depressed. He was having all kinds of crazy thoughts. He even thought about killing his self that night. On 01/13/08, plaintiff ate a little. He was about to kill his self that night, so he took a chance of getting wrote up and snuck and took his medication. it made him feel so good and relaxed. On 01/14/08, plaintiff ate because he took another chance of getting wrote up and snuck and took his medication. He felt so much better. Plaintiff did the same thing on 01/15/08. Plaintiff should not have to break the rules to take his medication. He should not have to go through all these problems and changes when all they had to do was issue him a Medical Pass or give him a copy of his Medical Pass that's in his Medical File. On 01/15/08, (Defendant)- Michelle Smith-Kennedy called (Defendant)- Pat Thomas and talked to her about this and Ms. Thomas told Ms. Kennedy that she would look into this. Plaintiff told Ms. Kennedy that Ms. Thomas was not going to do anything because he sent her a Request Form on 01/10/08 about the situation and she did not do anything. Plaintiff sent (Defendant)- Angel Martin a Request Form on 12/10/07 and Mrs. Martin threw the problem on (Defendant)- Pat Thomas

19

and Ms. Thomas threw the problem on (Defendant)- Lisa Coleman. Plaintiff sent Ms. Thomas a Request Form on 01/16/08. Ms. Thomas again threw the problem on (Defendant)- Lisa Coleman. All these times Ms. Thomas did'nt do anything. On 01/15/08, (Defendant)- Michelle Smith-Kennedy called the Chaplain and asked him if there was a Diet that Medical could give plaintiff since he was indigent (no funds in his account) meaning some type of food to have on hand before he takes his medicine and he said yes. So, Ms. Kennedy said that she would talk to Ms. Thomas about this; but she never did. Ms. Kennedy told plaintiff to send Ms. Thomas a Request Form about this which plaintiff did on 01/16/08. On 01/16/08, plaintiff sent (Defendant)- Pat Thomas a Request Form about the situation with his medication. He informed Ms. Thomas that he talked to (Defendant)- Michelle Smith-Kennedy and she talked to the Chaplain and he recommened that since plaintiff is indigent to ask the Medical Dept. to put him on a Special Diet so that he could have something to eat before he takes his medicine. On 01/16/08, plaintiff ate some food. He took another chance of getting wrote up to take his medication. He felt real good. He was finally getting some sleep and he was not having any crazy thoughts. On 01/17/08, plain-tiff could'nt take his medicine because he would of had to sneak past security again, but this time Security was watching too closely; so this time plaintiff could'nt get in. On 01/18/07, plaintiff filed an A.R.P. concerning the problem he was having with being denied his Mental Health Medication. On 01/18/07, plain-tiff sent (Defendant)- Angel A. Martin a Request Form about the problem he's having with taking his medication. Plaintiff told Mrs. Martin that Security makes the inmates take their Medication before they eat. Plaintiff told Mrs. Martin that if he takes his medication before he eats, it upsets his stomach, makes him dizzy and sometimes makes him vomit. Plaintiff told Mrs. Martin that last year when he was taking his medication (Defendant)- Michelle Smith-Kennedy issued

20

him a Medical Pass to eat first so that he would be able to take this same medication. Plaintiff told Ms. Martin that (Defendant)- Pat Thomas is giving him problems with trying to get a Copy of his Medical Pass that's in his Medical File or a Medical Pass period and that he needs to take his Medication because he was not eating, or sleeping, he was having all kinds of crazy thoughts, and all kinds of nightmares. Ms. Martin never responded back to the Request form. Plaintiff could'int sneak past Security to take his medication because Security was watching too closely. On 01/21/08, plaintiff got a chance to sneak past Security to take his medicine. He felt a whole lot better. He got a response back from the requestform that he sent to (Defendant)- Pat Thomas, but she did'int answer the requestform as always. She sent the requestform to (Defendant)- Lisa Coleman. Mrs. Coleman denied plaintiff his Medical Pass to be able to take his medication and a Special Diet because she said it takes Meds at least 30 mins. to dissolve and that plaintiff goes to the Chow Hall right after taking Meds. She was wrong because sometimes the inmates has to wait in line for 5 mins., sometimes 10 to 15 mins.; when they wipe the serving line down or when theres a long line. Sometimes, the line be outside the door on the prison walk, and by then the medicine has dissolved and has begin to take effect. Mrs. Coleman can't really tell how fast this medicine dissolves in plaintiff's body and how it affects him; so she should of not have denied him his Medical Pass or Special Diet on that judgment. Plaintiff did a trial test on one of the Pills on how fast it dissolves and it starts to dissolve from the start of one minute and in ten minutes its almost completely dissolved if not dissolved all the way. Plaintiff still had not heard anything from the request form, that he sent to (Defendant)- Angel A. Martin on 01/18/07 as always. On 01/22/08 and 01/23/08, plaintiff got a chance to sneak past Security to take his medicine. it made him feel so good. On 01/24/08, plaintiff got a response

back from the Request Form that he sent to (Defendant) - Pat Thomas about his medication. It took 14 days for a response. That's sad. Plaintiff could of killed his self by then. Instead of Ms. Thomas responding to the Request Form she sent it to (Defendant) - Michelle Smith-Kennedy. Everybody is throwing this Medical Problem on someone else, no one wants to deal with the issue. Ms. Kennedy said that she has notified Medical of this issue, for plaintiff to consider, (can you believe that she said for plaintiff to consider) putting in a Sick-Call to talk to the MD. (Defendant) - Pat Thomas put the problem on (Defendant) - Michelle Smith-Kennedy and Ms. Kennedy put the problem right back on Medical and she told plaintiff to deal with it his self. Everybody threw this problem on someone else again. Now, they threw the problem on plaintiff like they always do. Plaintiff couldn't take his medicine because Security caught him and turned him around. On 01/25/08, plaintiff couldn't sneak past Security to take his medication. He really needed it because he was so depressed. He couldn't eat at all that day. On 01/26/08, and 01/27/08, 01/28/08, and 01/29/08; plaintiff couldn't sneak past Security to take his medication. Now, it was really bothering him. He was not getting any sleep. He was sleeping on and off, a few hours each night. He was having terrible nightmares when he would finally fall to sleep. Plaintiff doesn't have any nightmares when he takes his medication. Plaintiff was so depressed. He just didn't know what to do anymore. He still didn't eat anything, but he dranked alot of water. Plaintiff was so depressed on 01/28/08, he forgot it was his birthday. On 01/30/08, plaintiff put in a Sick Call like (Defendant) - Michelle Smith-Kennedy told him too, because he thought that he was losing control of his self and life completely. Plaintiff was thinking about killing his self again. He decided that if he didn't get a chance to take his medication that day, he was going to kill his self that night. Plaintiff got a chance to sneak past Security to take his medicine. It was hard but he did it. He had to sneak around five times but

22

he made it. Plus, he ate. He felt so good. Plus, he was on the Call-out the next day to go to the infirmary for the problem he was having with his medication. On 01-31/08, plaintiff went to the infirmary for the problem he's having with his medication. What a big help that was. It really depressed him and stressed him out. Nurse Burks and Nurse R. Keiffer tried to get plaintiff his Medical Pass, but (Defendant)-Dr. Pacheco didn't want to give it to plaintiff. Ms. Burks reviewed plaintiff's Medical File and saw the Medical Pass was in it and the Order for it. She said, she doesn't see why (Defendant)-Dr. Pacheco should'nt give plaintiff a copy of that Pass or another Pass. Nurse R. Keiffer said the same thing. They said, all (Defendant)-Dr. Pacheco had to do was write plaintiff an Order for a new pass, but Dr. Pacheco did'nt want to. Ms. Keiffer was so confident that Dr. Pacheco was going to give plaintiff the pass to where she filled out one for plaintiff before she even talked to Dr. Pacheco. All she needed was his okay. Ms. Keiffer referred the problem for Dr. Pacheco to review, because Dr. Pacheco said that he wanted to review plaintiff's Medical File before he issues plaintiff the Medical Pass. Plaintiff wanted to cry when he was denied his Medical Pass again for the eight consecutive time, because he really thought that he was going to get the Medical Pass the way Ms. Burks and Ms. Keiffer was talking because he really needed his medicine. When plaintiff doesn't take his medication for days in a row he gets sucidial thoughts. Plaintiff did'nt get to take his medication because he could'nt sneak past Security. On 02/01/08, plaintiff could'nt sneak past Security to take his medication. As soon as he crept around the corner he got caught. He was told to go to his Unit or he would get a write up. On 02/02/08, plaintiff got a chance to sneak past Security to take his medication. He felt so much better. On 02/03/08, 02/04/08, and 02/05/08; plaintiff could'nt sneak past Security to take his medication. He felt so sad and depressed. On 02/06/08, plaintiff got a chance to sneak past Security to take his medicine. On 02/07/08, plaintiff got a chance to take his medicine.

23

He talked to the Correctional Officer on duty. He was kind enough to let plaintiff take his medication, but he told plaintiff that he could'nt do it again unless plaintiff had a Medical Pass. On 02/08/08 and 02/09/08, plaintiff could'nt sneak past Security to take his medication. He hates that because he hates feeling sad and depressed. He did'nt have the desire to eat anything and he wasn't getting any sleep again. On 02/10/08, plaintiff got a chance to sneak past Security to take his medication. He got another inmate to distract the Correctional Officer on duty and he snuck in. That's sad. Plaintiff should not of had to do things like that to be able to take his medication. On 02/11/08, plaintiff could'nt sneak past Security to take his medication. (Defendant) - Mr. Lewis of Mental Health called plaintiff to his office and asked plaintiff why he was not taking his medication on some days. Plaintiff told Mr. Lewis why and he said that he would talk to Medical about this, but he never did. Plaintiff told Mr. Lewis that he needs his medicine real bad because when he doesn't take his medicine for days in a row he has sucidal thoughts, he doesn't have the desire to eat, gets very depressed, stressed and sad. Plaintiff also told Mr. Lewis when he is not able to take his medication he is not able to sleep, he has nightmares, sees things and hears things. On 02/12/08, plaintiff did'nt get a chance to sneak past Security to take his medicine. When he tried Lt. Davis - (Lt. Davis is a Capt. now) turned him around. On 02/13/08, plaintiff got a chance to sneak past Security to take his medication. He felt a whole lot better. On 02/14/08, 02/15/08, 02/16/08, 02/17/08, 02/18/08, and 02/19/08; plaintiff did'nt get a chance to sneak past Security to take his medication. He really needed it because he was so depressed. He had not eaten anything in days. It was really bothering him. He was not getting any sleep and he was so depressed. He just did'nt know what to do anymore. He thought that he wanted to die. On 02/20/08, plaintiff finally received a Medical Pass to eat before he takes his meds. In fact he received a

24

total of three Passes. Thank God for that. The only problem with this picture is that plaintiff received these Medical Passes today and (Defendant) Lisa Coleman issued plaintiff a Medical Pass on 02/14/08 but he did not receive it until today.


Continue From Denial of Medical Treatment and Medical Care

On 02/11/08, plaintiff started having pain again in his private area. Right then and there he knew what it was. He went to the shower and checked his private area and he noticed the infection came back. He keeps on telling Medical time after time that he's infected with the MRSA Stap infection and that proves it. On 02/13/08, plaintiff was hurting real bad and in terrible pain. He filled out a Sick Call to see the doctor. On 02/13/08, plaintiff was not put on the Call Out for Sick-Call. That's sad. Medical see's that these infections keep coming back, and that plaintiff is hurting, in terrible pain and they didn't want to give plaintiff Medical Treatment again. So, plaintiff filled out another Sick-Call. On 02/14/08 plaintiff went to Sick Call for the Boil infection. Nurse Burks said that it was a Cist. Plaintiff knew that they were going to say that. They always do. Plaintiff didn't get a chance to see the MD. He had to wait until the next week. What a shame. Plaintiff told Nurse Keiffer that he was in terrible pain and that he needed to see the MD today. She would'nt let him. (Defendant)- Dr. Pacheco was also supposed to review plaintiff's Medical File since 01/31/08 for the problem he was having with taking his medication. Plaintiff did not hear anything since today because he asked the Nurse to look into his file and tell him what Dr. Pacheco said. He had already made his decision and did not notify plaintiff. He said that there was no need to change plaintiff's eating patterns. That's a crazy conclusion because you can't change the eating patterns over here. Plaintiff needed his Medical Pass not a change in eating patterns. Anyway, Dr. Pacheco denied plaintiff

25

his Medical Pass to eat before he takes his Medication. On 02/20/08, plaintiff was called to see (Defendant)-Dr. Pacheco over a week later after he filled out a Sick-Call for the Ball infection. Dr. Pacheco did not examine plaintiff or give him any Medical Treatment. Plaintiff told Dr. Pacheco that he was in severe pain and needed Medical Treatment.

Violation of Department of Corrections Policy-Department Regulation No. B-05-005, etc.- "Administrative Remedy Procedure"

(Defendants)-Monya Heyse, Linda Steele, i. Womack and Linda Ramsay processes, accepts and rejects the A.R.P.'s that they want to when they feel like it. On 11/28/07, plaintiff filed an A.R.P. against DogWood Case Mgr. Shephard. He dropped the A.R.P. in the A.R.P. drop box at exactly 7:00 a.m. Later on that day when plaintiff entered DogWood Unit on his way back from lunch Ms. Shepherd was sitting in DogWood Key. She called plaintiff to the Key and told him that she needed to talk to him. Plaintiff asked her what about. She said, you wrote me up. you're sueing me. Plaintiff asked her how did she know that he filed on A.R.P. against her. She said, the front office called me and told me to resolve this A.R.P. Plaintiff told her that the front office was not supposed to do that. They were not supposed to inform you about this A.R.P. not just yet, not so soon; because i already have an A.R.P. pending that's still in the First Step. Plaintiff told her that the front office vio lated D.O.C. Policy because they were supposed to backlog that A.R.P. until the first one has been resolved on the Second Step Level. Again, on this same day; plaintiff was on his way back from the infirmary and Ms. Shephard stopped him and begin to harass him and question him for a second time about the A.R.P. that he filed against her. After the conversation was over and didn't go her way she said that they would talk about it tomorrow. On 12/20/07, plaintiff filed an

A.R.P. against D.O.C. Maintaince Employee Ben Otwell for Sexual Harass-ment/MisConduct. At this time plaintiff had another A.R.P. currently in the system that was filed on 10/31/07. Plaintiff then filed a third A.R.P. on 01/18/08. The A.R.P. that was filed on 10/31/07 was denied on the First Step Level on 11/20/07. Plain-tiff appealed the decision to the Second Step Level and it was denied on 01-30-08. After all this took place the (Defendant)- A.R.P. Screening Officer Mona Heyse was to start the procedure on the A.R.P. that was filed second on 12/20/07 against Ben Otwell, but instead she placed this A.R.P. on the side and began the process on the A.R.P. that was filed third on 01/18/08. She was not supposed to do that. She violated D.O.C. Policy. She is to process the A.R.P.'s in the order that they come. On 03/05/08, plaintiff wrote (Defendant)- Mona Heyse seeking an ex-planation for this and she said that this A.R.P. is still under investigation, and cannot be processed until the investigation is complete. She knows that she can't set one A.R.P. on the side especially the one that was filed first and process another; the one that was filed second or third. In other words, she can't process and set aside the A.R.P.'s that she chooses too. Theirs a Policy she must go by. (Defendant)- Linda Ramsay knows what (Defendant)- Mona Heyse is doing and she's letting her do it and get away with it. Ms. Heyse said the A.R.P. can't be processed until the in-vestigation is complete. That's what the First Step is for when an A.R.P. is filed. You do your investigation in the First Step and you grant or deny relief acc-ording to the investigation, which leaves Ms. Heyse 45 days to do that. Plaintiff wrote the Dept. of Corrections - Internal Affairs Section on 03/10/08 and in-formed them about this. He asked the (Defendant)- D.O.C. to order (Defendant)- Mona Heyse to start the process on this A.R.P. The D.O.C. sent this letter back to this prison. (Defendant)- Linda Steele sent this letter back to plaintiff stating due to improper filing. The A.R.P. Handbooklet states that nothing in this procedure should serve to prevent or discourage an inmate from comm-

27

unicating with the Warden or anyone else in the Department of Public Safety and Corrections. On 03/07/08, plaintiff wrote (Defendant)- Mona Heyse again about this matter. He informed her that she is violating his "Due Process" rights and "Access To Courts" rights etc. by not processing this A.R.P. She never responded back to this letter. (Defendants)- Tim Wilkinson, Monya Heyse, Linda Ramsay Steele, and the Dept. of Corrections was stalling and/or trying not to process this A.R.P. that's why they kept placing it on the side and that's why D.O.C. sent my letter back when i informed them about it and when i inquired about it. These above mentioned Defendants used on A.R.P. that plaintiff filed on 10/31/07 to help them in violating plaintiff's rights in order to help them to not process this Sexually Assault A.R.P. This A.R.P. that was filed on 10/31/07 was filed before the Sexual Assault A.R.P. which was on 12/20/07. After the process on the A.R.P. that was filed on 10/31/07 was complete they were to start processing the A.R.P. that was filed on 12/20/07. but they stalled and delayed the process on the A.R.P. that was filed on 10/31/07. Plaintiff completed the Second Step on the A.R.P. that was filed on 10/31/07 on 12/08/07. (Defendants)- Mona Heyse, Linda Steele and Tim Wilkinson did not send the Second Step to (Defendant)-Linda Ramsay until 01/15/08. Ms. Ramsay knew that this was a violation and she went along with it. On 01/25/08, plaintiff wrote (Defendant)- Mona Heyse. He told her that it has been 48 days since this A.R.P. has been in the Second Step Level. He told her that the Second Step Level only lasts for 45 days and he asked her what was the status of this A.R.P. Ms. Heyse responded by saying; she doesn't have any control over headquaters decisions. But what plaintiff did'nt know was that Ms.Heyse did'nt send this Second Step to Headquaters until 01-15/08 which would of made it less than a week instead of 48 days. On 01/31/08, plaintiff wrote (Defendant)- Mona Heyse stating; in the input Screen you listed that you received WNC-2007-1510- Step 2 on 01/15/08. Theres no way in this world

28

that can be correct. i had five days to respond from Step 2. if you look at the date on the envelope the A.R.P. came in and the date on Step 2 that i sent you; 01/15/08 is incorrect. you recieved Step 2 on 12/08/07. that's why D.O.C. is taking so long to process this A.R.P. you're saying that you recieved Step 2 from over a month after i signed for it. that's impossible because i would have not met the 5-day deadline. i would like to know why you processed Step 2 that late and why all my A.R.P.'s are being mishandled. Ms. Heyse responded back by saying; "No, Sir; the screen listed the date 2nd step was rec-occpted at D.O.C. i do not have capibilities to input dates on their screen. But what Ms. Heyse failed to state was that she delayed this A.R.P. and was the cause of it with (Defendant)-Linda Ramsay playing along. On 02/27/08, plaintiff wrote the Dept. of Corrections-internal Affairs Section stating; On 10/31/07, i filed an A.R.P. (2007-1510). it was denied on the first step. i completed my Second Step on 12/08/07. the reason for this letter is because i am requesting the date that Winn Correctional Center submitted my Second Step Response to D.O.C. (Defendant)-Dept. of Corr-ections sent my letter back to this prison. (Defendant)-Linda Steele sent my letter back to me with a letter of her own. it stated; This was returned to me from D.O.C. Be advised the day we recieve your request for a Second Step we pr-ocess it for forwarding to D.O.C. if you have questions you should send your req-uest to my office. Anything you send directly to the state will be returned to me. Each time the Dept. of Corrections sent plaintiff's letters back they discouraged and prevented plaintiff from communicating with the Dept. of Corrs. which is a vio-lation of their own Policy. On 03/19/08, plaintiff had to go to Deputy Warden Jim Morgan to make (Defendant)- Mona Heyse process the Sexual Assault A.R.P. On 11/16/08, plaintiff filed an A.R.P. against DogWood Unit Mgr. and A.R.P. Screen-ing Officers Monya Heyse and Linda Steele -(all three Defendants). (Defendant)-Mona Heyse rejected this A.R.P. saying it is repetitive in nature and being

addressed in another A.R.P. (2008-646). She should not have rejected this A.R.P. on those grounds. A.R.P. 2008-646 dealt with two Case Mgrs. running plaintiff out of their office etc. A.R.P. 2008-1408 dealt with (Defendants)- Mona Heyse, Linda Steele and DogWood Unit Mgr. violating D.O.C. Policy by trying to get plaintiff to drop the A.R.P. that he filed against Case Mgr. Triplette after he had already completed the Second Step and sent it to D.O.C. (Defendants)- Monya Heyse and Linda Steele held this A.R.P. for more than two weeks after plaintiff had already completed the Second Step just like they did once before with the A.R.P. that he filed on 10/31/07. Ms. Heyse was not supposed to address this A.R.P. because it was filed against her. On 11/01/08, plaintiff filed an A.R.P. against (Defendants)- Nicole Walker, Chief of Unit Mgmt. and Melody Turner, Managing Director, Division III of CCA for a Denial of Lost Property Claim. (Defendant)- Monya Heyse rejected this A.R.P. stating that this problem is not eligible for review thru the A.R.P. system because there are specialized administrative remedy procedures in place for this type of complaint; "Lost Property Claim." Plaintiff followed these procedures, that's why he filed the A.R.P.; because in order for him to address the claim in Court he has to exhaust his "Administrative Remedies." Also, Ms. Heyse was not supposed to reject this A.R.P. anyway because it was against (Defendants)- Nicole Walker and Melody Turner. She also stated that it is past the 90 day time limit for filing. That was incorrect. Like she said, plaintiff had to follow the Specialized Administrative Remedy Procedures for this complaint; which he did. Then when he received an answer from CCA which was on 09/23/08 and if he was not satisfied then he would be able to file his A.R.P. which he did in less than ninety days. Plaintiff wrote (Defendant)- Mona Heyse a letter on 11/15/08 about the A.R.P. that she rejected that was against her, DogWood Unit Mgr. Hardwell and Linda Steele and about the A.R.P. concerning the "Lost Property Claim" that she rejected. Plaintiff asked her to process these two A.R.P.'s. She didn't and she didn't respond back to the letter. On 11/01/08, plaintiff wrote

30

(Defendant)- Mona Heyse another letter about these violations. The letter said; on 11/01/08, i filed an A.R.P. with four incidents. you rejected this A.R.P. because i requested a remedy for more than one (incident- a multiple complaint). you also said that if i wish to proceed to separate my claims- only one issue per request for A.R.P. The actions in denying this A.R.P. is arbitrary, without factual basis and/or reason, unconstitutional and a violation of D.O.C. Policy. i say that because i filed an A.R.P. on 11/08/06 with multiple complaints, more than one incident- (Denial of Medication and Lost A.R.P.) and it was accepted. i filed an A.R.P. on 09/15/08 with multiple complaints, more than one incident-(Denial of Medical Care and Violation of D.O.C. Policy - Dept. Regulation No. B-05-005, "Administrative Remedy Procedure)" and it was not rejected. i filed an A.R.P. on 11/28/07 with multiple complaints, more than one incident- (Harassment, Failure To Perform Job Duties and Denial of Access to the Law Library) and it was accepted. This is a total of four A.R.P's with multiple complaints, more than one incident that was accepted but you rejected WNC-2008-1372. Dept. Regulation No. B-05-005 states that if an inmate submits multiple requests during the review of a previous request, they will be logged and set aside for handling at such time as the request currently in the system has been exhausted at the Second Step or until time limits to proceed from the First Step to the Second Step have lapse. i still have A.R.P.'s in the system. This A.R.P. should not have been processed until these pending A.R.P's has been resolved in the Second Step Level; and it should not have been rejected on those grounds because you previously accepted and processed four previous A.R.P.'s on the same grounds that you used to reject this one. i'm requesting that you please accept and process A.R.P. WNC-2008-1372-(Ms. Heyse still did not accept and process this A.R.P.). I'm also dropping A.R.P. WNC-2008-869, Subject Code :0703- Incident Date 07/02/08- Date Received 07/07/08. Ms. Heyse did not respond back to this

31

letter. On 01/28/09, plaintiff wrote (Defendant)-Mona Heyse another letter about these violations. The letter said; i wish to bring to your attention that on 12/30/08, i filed an A.R.P. for Denial of Medical Care and Rejection of A.R.P.-Retaliation against Dr. Engelson, Ms. Clark-(Dental Asst.), (WNC)-Medical Dept., Winn Correctional Center, Corrections Corporation of America, (CCA)-Contracted Medical Provider, Lisa Coleman, Linda Steele and Mona Heyse. You sent this A.R.P. back to me useing "improper Procedures." you sent this A.R.P. to Sgt. Lane. The A.R.P. was not in a sealed envelope sitting on Ms. Triplette's desk with Ben Otwell sitting next to Ms. Triplette's desk the man that i have a Sexual Assault Claim against. The Confidentiality of this A.R.P. was violated. Under File Maintenance/Confidentiality: A.R.P.'s should be maintained in a specific area. None of the A.R.P. materials should ~~indisdyons~~ be given to anyone other than me, a direct party, or someone involved in the review process. You told Sgt. Lane that the reason why you sent this A.R.P. back to me because it did not have a D.O.C.* on it. You also told her to tell me if you and your Dept. have to follow the rules, i have to follow them too. It seems like you made this issue a conflict, becouse in the past i've filed A.R.P.'s against you and Ms. Steele for not following procedures, policy, and Dept. regulations in processing my A.R.P.'s. Ms. Heyse let me make it clear to you that i don't want any conflicts with you or your Dept. Personally, i respect you dearly because you're a person in authority. It's just that i stand up for my rights and i won't tolerate them being violated. So, could you please don't judge me as a bad person becouse i'm not. So, please let's keep this as Business and not Personal. So, let's just run this race as friends okay and see who wins. i intend to win. Ms Heyse this is going to be a long, tuff race. From this day forward i'll start praying for you and your family, for blessings and yo'll safety. God answers my prayers. Anyway, after reviewing my files and the record; i noticed that you sent this A.R.P. back to me that was filed on

32

12/30/08 and the one that was refiled on 01/06/09. Why did you do that? You did not even BackLog this A.R.P. Why not Ms. Heyse? You processed this A.R.P. You wern't supposed to do that. You again violated D.O.C. Policy - Department Regulation No. B-05-005). You were a party in this Complaint. The entire A.R.P. was based on you rejecting my A.R.P. in which i'm seeking Medical Care in Retaliation for a conflict that you believe in your mind exists between me and you and your Dept. which is not true. if an inmate registers a complaint against a staff member, that employee shall not play a part in making a decision on the request; (Dept. Regulation No. B-05-005). Ms. Heyse you Know that you and your Dept. is under obligation and duty to follow policy, procedures and Dept. Regulation but y'all fail to do so. i'm requesting that your Dept. process the A.R.P. that was refiled on 01/06/09; please? Please answer this letter to its fullest and the other one also. May God Bless you and your family and Keep y'all safe! Ms. Heyse never answered this letter and never processed this A.R.P. On 01/28/09, plaintiff wrote (Defendant) - Mona Heyse another letter about some more violations. The letter said; i would like to bring to your attention that on 12/17/08, i filed an A.R.P. For Harassment, interference of land Denial and inadequate Medical Treatment against DogWood Unit Mgr. Ms. Hardwell (one of the main parties) in the Complaint/Suit, Dr. Engelson, Ms. Clark (Dental Asst.), (WNC) Medical Dept., Winn Correctional Center, Corrections Corporation of America, (CCA) - Contracted Medical Provider and A.R.P. Screening Officer Linda Steele. You rejected this A.R.P. because you said it was a Multiple Complaint (6 legal pages/16 bullets). i strongly disagree. The entire A.R.P. is based on Ms. Hardwell Harassing me by interfering with me seeking "Emergency Medical Treatment" from Dental on 12/12/08, and once i got to Medical for this "Emergency Medical Treatment" it was denied and inadequate. So, my question to you is how can this be a Multiple Complaint. your decision simply is not correct, and it cannot be sustained. it's one Complaint but with different parties. your

33

decision and findings does not support such a claim. Every time, Ms. Hardwell or Ms. triplette is a party or defendant in my A.R.P.'s theirs a problem. i also mentioned the statement that was made to me on 11/10/08 about Dental from your Subordinate Linda Steele. Her statement dealt with the same thing about one of the reasons i was being denied treatment and on 12/17/08 Dr. Engelson mentioned the same thing that Ms. Steele said. This can be proved in Discovery. i refiled the A.R.P. on 01/06/08. After reviewing my files and the record, i noticed something. You sent the A.R.P. that i refiled on 01/06/08 back to me. Why did you do that? On the Backlog Form you put that my Complaint was for Inadequate Dental Care- Cannot Eat Therefore Cannot Take Mental Health Medication, but you forgot to state that the Complaint was also against Ms. Hardwell for Harassment and Interference in seeking Dental Treatment which formed the basis of this Complaint. Why was she not included when she was one of the main parties? Why was Ms. Hardwell left out? Now, heres what i don't understand and what really caught my attention besides you sending the A.R.P. that was refiled back to me. On the Backlog Form you inputed that this A.R.P was received in your office on 12/26/08. If you review the record and your files correctly you will notice that you are incorrect. i filed this A.R.P on 12/17/08. whenever i file an A.R.P. it will be sent to your office on the exact day-(date) that's on the A.R.P. or the next day; no later than that in time for the A.R.P. to be picked up and delievered to your office between 7:00 a.m. and 8:00 a.m., the time the A.R.P.'s are picked up. if you review the record and your files you'll see what i'm saying is correct. So, my question to you is how did your office recieve this A.R.P. on 12/26/08 when it was in fact filed on 12/17/08? This date is simply not correct. The date of the incident was 12/12/08 and the A.R.P. was filed on 12/17/08, so how did you come up with this incident Date of 12/23/08? Ms Heyse, considering all the circumstances in the processing of this A.R.P. that was filed on 12/17/08 and then refiled

34

on 01/06/08 is not objectively reasonable. i have presented favorable findings of facts!

## Questions

1) Why did you send the A.R.P. that was refiled on 01/06/08 back to me?

2) Why was Ms. Hardwell left out when she was one of the main parties and formed the basis of the Complaint?

3) Why did you input on the Backlog that the A.R.P. that was filed on 12/17/08 was received in your office on 12/24/08?

4) Why did you input on the Backlog that the incident Date of this A.R.P. was 12/23/08 when the incident Date was in fact 12/19/08 and the A.R.P. was filed on 12/17/08?

On 02/02/09, plaintiff wrote (Defendant) - Mona Heyse another letter concerning more violations. The letter said; i would like to bring to your attention that after reviewing my files and records violations were found that was committed by you and your Dept. First of all i would like to address the A.R.P. that was filed on 11/10/08 against Correctional Officer Mrs. Supp and Correctional Counselor Sgt. Lane for failure to Perform Job Duties. There is no Backlog on this A.R.P. and it was not processed at all by you A.R.P. Dept. i figured something was wrong with this A.R.P. but i never had time to review my files and records, but after doing so this was discovered. Ms. Heyse, ccALDoc Employees must obey all authorized regulations, policies, and procedures. Each employee must perform his/her duties properly free of negligence so as to fulfill the purposes and responsibilities of their assignment. This is not being done by you or your Dept. - (Malfeance). Ms. Heyse, would you please process this A.R.P.? Why was this A.R.P. not filed and processed? On 12/17/08, you rejected WNC-2008-1578 because you said it was a Multiple Complaint, but WNC-2007-1610 was a Multiple Complaint. it was accepted and not rejected. WNC-2008-646 was a Multiple Complaint. it was accepted and not re-

35

jected. WNC-2008-1174 was a Multiple Complaint. it was accepted and not rejected. WNC-2008-1378 was a Multiple Complaint. it was rejected and not accepted. On 12/11/08, i filed an A.R.P. but refiled it on 01/06/08. it was a Multiple Complaint. it was accepted and not rejected. On 11/06/06, i filed an A.R.P. it was a Multiple Complaint. it was accepted and not rejected. This is a total of seven A.R.P.'s with Multiple Complaints. two of them were rejected and five were accepted. My point is, if i have to follow the rules like you told Sgt. Lane to tell me when you sent one of my A.R.P.'s back, then maam you have to follow them too. you can't just process, accept and reject the A.R.P.'s that you want too when you feel like it. you and your Dept. must follow procedures, policy, and Dept. Regulations when processing these A.R.P.'s. You and i have been having this problem for a few years now. i brought it to you and you Department's attention and you still fail to address it. On 12/30/08, i filed an A.R.P. for Interference/Denial and Inadequate Medical Treatment and Harassment against DogWood Unit Mgr. Hardwell which formed the basis of this Complaint and is one of the main parties. i refiled this A.R.P. on 01/06/08 because of an error that you said i made. Ms. Heyse, there is no backlog on this A.R.P. it was not filed into the record or processed at all by your Dept. Would you please process this A.R.P.! Why was this A.R.P. not filed or processed at all by your Dept? On 12/30/08, i filed an A.R.P. for Denial of Medical Care/Rejection of A.R.P./Retaliation ~~against you~~ and your Subordinate Linda Steele whereas y'all were two of the main parties. i refiled this A.R.P. on 01/06/08 because of an error that you said i made. Ms. Heyse, there is no Backlog on this A.R.P. it was not filed into the record or processed at all by your Dept. Would you please process this A.R.P.? Why was this A.R.P. not filed or processed? On 12/30/08, i filed an A.R.P. for Denial of Medical Care/Rejection of A.R.P./Retaliation against you and your Subordinate Linda Steele whereas y'all were two of the main parties. i refiled this A.R.P. on 01/06/08 because of an error you said that i made. Ms. Heyse, there is no Backlog on

36

this A.R.P. it was not filed into the record or processed at all by your Dept. Would you please process this A.R.P.? Why was this A.R.P. not filed into the record or processed? On 12|30|08, i filed an A.R.P. for Denial of Medical Care. This is the A.R.P. that you sent back to me useing "Improper Procedures." You sent this A.R.P. back to me thru Sgt. Lane. The A.R.P. was not in a sealed envelope sitting on Ms. Triplette's desk with Ben Otwell sitting next to Ms. Triplette's desk the man that i have a Sexual Assault claim against. The Confidentiality of this A.R.P. was violated. Under File Maintenance | Confidentiality = A.R.P.'s should be maintained in a specific area. None of the A.R.P. materials should be given to anyone other than me, a direct party, or someone involved in the review process. You told Sgt. Lane that the reason why you sent this A.R.P. back to me because it did not have a D.O.C.# on it. You also told her to tell me if you and your Dept. has to follow the rules, i have to follow them too, but on 12|23|08 i filed an A.R.P. for Denial of Medical Treatment and Mental Health Care. This A.R.P. did not have a D.O.C.# on it and you accepted it. Ms. Heyse, you're processing, setting aside and rejecting the A.R.P.'s that you choose too. You can't do that. That's unconstitutional and violating D.O.C. Policy. If you review your files and records you'll see that there are other A.R.P.'s that you and your Dept. accepted that i filed without D.O.C. numbers. On 11|10|08, i filed an A.R.P. for abuse and violation of D.O.C. Policy. There was no Backlog on this A.R.P. You said this A.R.P. was Repetitive in Nature and being addressed in A.R.P.# 2008-646. That's why you rejected it. i strongly disagree. This is unreasonable. You rejected this A.R.P. because it was against you,- (mainly you); your Subordinate Linda Steele and DogWood Unit Mgr. Hardwell. A.R.P.# 2008-646 was for Harassment, Failure To Perform Job Duties and Denial of Access To the Law Library. A.R.P.# 2008-1408 was for Abuse and Violation of D.O.C. Policy. So, could you please tell me how you came to the conclusion that A.R.P.# 2008-1408 was Repetitive in Nature and being addressed in A.R.P.# 2008-646? Ms Heyse, you weren't supposed to address this A.R.P. Dept. Regulation No. B-05-

37

005, "Administrative Remedy Procedure." if an inmate registers a complaint ag-
ainst a staff member, that employee shall not play a part in making a decision on
the request. This is a violation of D.O.C. Policy, Procedures and Dept. Regulations. On
03/07/08, i filed an A.R.P. against you and CCA. you addressed this A.R.P. Ms.
Heyse, the A.R.P. was against you. you wern't supposed to do that and in doing
so you rejected A.R.P.* 2008-1408 as well; because they were against you. On
11/01/08, i filed an A.R.P. against you and other parties in which you were a main
party. Ms. Heyse, again you wern't supposed to address this A.R.P. You were a
party in this A.R.P. and in doing so you rejected it. On 09/15/08, i filed an A.R.P
against you and other parties in which you were a main party. you addressed this
A.R.P. You wern't supposed to do that. you were a party. Out of 99.9% of the
A.R.P.'s that i file against you, your Subordinates and your office; you address
them and reject them. Ms. Heyse, the only reason why i'm addressing my con-
cerns to you about your Subordinates, you and your office because these vio-
lations are affecting me. it doesn't matter to me what y'all do. Frankly, it's none
of my business. But, as long as you'll keep these violations up; yo'll are hinder-
ing and is making it very hard for me to address my rights that are being viol-
ated that i'm claiming in these A.R.P.'s to the Courts. y'all are violating my
"Due Process Rights" and "Access to Courts Rights" and restricting them because
i must exhaust my Administrative Remedy Procedures before i can redress my
Grievances in the Federal Courts. you never answered my letters that i sent to
you on 01/28/09. Could you please address these letters and this one when you're
notto busy and has time?

## Questions

1) why was the A.R.P. that was filed on 11/01/08, notfiled and processed by your office?
2) Could you please explain to me how A.R.P * 2008-1408 is Repetitive in Nature and
being addressed in A.R.P.* 2008-646?

3) Why was the A.R.P. that was filed on 12/17/08 and then refiled on 01/06/08, not filed and processed by your office?

4) Why was the A.R.P. that was filed on 12/30/08 and then refiled on 01/06/08, not filed and processed by your office?

5) Would you please process and file the A.R.P.'s that's being addressed in Questions 1, 3, and 4?

6) Could you send me documentation of all A.R.P.'s filed by me that were Backlogged, Accepted, Rejected, Disposition Date, Subject Code, Incident Date and what the Complaint was about since my arrival at this facility?

Please answer this letter to its fullest. May God Bless you and your family and keep ya'll safe!

(Defendant) - Mona Heyse did not answer any of these letters.

Continue From Pg. 4

V. Relief: the Defendants conducts a search/shakedown they won't damage, destroy, or otherwise abuse plaintiff's belongings and personal property through willful acts or gross negligence. Grant plaintiff a Preliminary injunction ordering Mona Heyse, Linda Steele, i. Womack and Linda Ramsay to follow Dept. of Corrections Policy in processing plaintiff A.R.P.'s. Grant plaintiff a Preliminary injunction ordering Mona Heyse and her Dept. to process and file all A.R.P's that plaintiff has filed. Grant plaintiff a Jury Trial. Grant plaintiff nominal, compensatory, and punitive damages on all four claims filed. Grant plaintiff a Preliminary injunction ordering the Defendants to improve Medical Screening and Examinations and Sick Call Procedures. Grant plaintiff a Preliminary injunction ordering the Defendants to correct the deficiencies that subjects plaintiff to grave

39

risks. Grant plaintiff a Preliminary Injunction ordering the Defendant's to correct the inadequate Medical Administration and the A.R.P. Administration. Grant plaintiff a Preliminary Injunction ordering the Defendants to give plaintiff proper medical care in the future. Appoint Counsel to Plaintiff

02/10/09                                    Darrel D. LeDee

Darrel Grant LeDee, #326719
Winn Correctional Center
Dogwood C-2, Bed 31
P.O. Box 1260
Winnfield, La 71483-1260

Legal Mail)

Clerk of Court
United States District Court
Western District of Louisiana
300 Fannin St., Ste.1167
Shreveport, La. 71101-3083

ROBERT H. SHEMWELL, CLERK
FEB 17 2009

UNITED STATES POSTAGE
$ 04.95°