
RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _____
BY _____
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DARREL GRANT LEDEE (#326719) | DOCKET NO. 09-CV-275; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| TIMOTHY WILKINSON, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION
### TO DISMISS CERTAIN CLAIMS AND DEFENDANTS

Pro se Plaintiff Darrel LeDee filed the instant civil rights complaint (42 U.S.C. §1983) *in forma pauperis* on February 17, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center. According to his latest filing, Plaintiff is no longer incarcerated. Plaintiff has named as defendants: Tim Wilkinson, Angel Martin, Nicole Walker, Unit Manager Hardwell, Case Manager Triplette, L. Shephard, Pat Thomas, Mona Heyse, Linda Steele, Linda Ramsay, Melody Turner, Lisa Coleman, A Woods, Joanne Smith, Dr. Pacheco, Winn Correctional Center (WCC), Corrections Corporation of America (CCA), Medical Provider CCA, James LeBlanc, Richard Stalder, Louisiana Department of Corrections, Michelle Smith-Kennedy, and Mr. Lewis. He seeks injunctive and monetary relief.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

**FACTUAL BACKGROUND**

*Medical Care Issues*

Plaintiff alleges that he was first denied medical care in July 2007 for a boil on his leg. He sought treatment from Dr. Pacheco on October 19, 2007 and filled out another medical request form on October 29, 2007 for the same boil. Plaintiff says the boil went untreated, as Dr. Pacheco, Joanne Smith, and A. Woods told him that nothing could be done. They suggested that the boil was a spider bite.

On October 31, 2007, Plaintiff went to his case manager L. Shephard and asked her for help. Shephard said that she would speak with Nicole Walker and the warden, but she never did. On the evening of November 1, 2007, Plaintiff went to the infirmary and the nurse dressed his wound. [Doc. #1, p.10] The nurse told him to take Aspirin. Apparently, the boil healed on its own, as Plaintiff states that the boil resurfaced on December 9, 2007.

Plaintiff sent request forms to Pat Thomas and Angel Martin on December 10, 2007 stating that he believed he had a staph infection, particularly, MRSA (Methicillin resistant Staphylococcus aureus). He informed them that he was being denied medical care. Plaintiff claims that Angel Martin passed the problem on to Pat Thomas, who passed it on to LPN Lisa Coleman. Coleman told the supervisors that Plaintiff had been seen at sick call; Plaintiff

2

states that he was seen, but not treated.

Plaintiff submitted a sick call request on December 11, 2007 for the boil/infection, and he was called out on December 12, 2007. Dr. Pacheco told Plaintiff that the boil was a cyst. On December 19, 2007, Plaintiff spoke with Nicole Walker, who said that she would discuss the matter with Lisa Coleman. Walker did not follow through, however. On December 26, 2007, Plaintiff was called out to see Dr. Pacheco about having the "cyst" removed, but by that time, the boil had healed.

On February 11, 2008, Plaintiff discovered another boil. Plaintiff submitted sick call requests on February 12 and 13, 2008, and he was examined on February 14, 2008. [Doc. #1, p.28] Nurse Burks said it was a cyst. Plaintiff was finally called out to see Pacheco on February 20, 2008, but Pacheco did not examine Plaintiff or prescribe any medication. [Doc. #1, p.29] Apparently the boil resolved on its own.

Plaintiff states that, on September 10, 2008, the boil resurfaced in the same area. He made a sick call and was called to the infirmary on September 11, 2008. Defendant Woods examined Plaintiff and said that nothing was wrong. Plaintiff claims that by October 2008, the infection had spread to his other leg, as well. [Doc. #1, p.16] Dr. Pacheco told Plaintiff that the boils were "hair infections."

On January 29, 2009, Plaintiff experienced migraine-like

3

symptoms and pain in his ear and neck. He discovered a boil on his head, which started to drain puss onto his pillow. [Doc. #1, p.17] On February 2, 2009, Plaintiff met with Pat Thomas, but she refused to give him treatment. Plaintiff could not endure the pain anymore, so he went to the key officer Mrs. Williams and made a medical emergency. Mrs. Williams observed a little blood and swelling and denied Plaintiff's medical request. When Plaintiff returned to his unit, he attempted to drain the wound himself.

### Lost Property Issues

Plaintiff complains that officers searched his unit on March 28, 2008, and all of his belongings from his footlocker were scattered on the floor by the officers. The guards picked up all of the inmates' belongings and personal property so it could be thrown away. [Doc. #1, p.18] Plaintiff's lost property included several court documents, police reports, and Bible certificates. His Lost Personal Property claim was denied by Ms. Walker on May 1, 2008. Plaintiff claims that other inmates' property was replaced by CCA. Plaintiff appealed Ms. Walker's decision, but Melody Turner denied the appeal on September 23, 2008.

### Psychiatric Medication

Plaintiff alleges that, on January 1, 2008, he could not take his psychiatric medication anymore because pill call was before lunch. He states that, without eating first the medication upsets his stomach, sometimes to the point of vomiting, and it causes

4

dizziness. Plaintiff sent a request to Michelle Smith-Kennedy explaining the situation and requesting a pass allowing him to take the medication after eating lunch. She told Plaintiff to speak with the nurses. Plaintiff spoke with Mary Fobbs and Nicole Walker on January 9, 2008, but both women said that they could not help him. [Doc. #1, p.20-21] On January 10, 2008, Plaintiff submitted requests to Pat Thomas and Smith-Kennedy. Plaintiff also filed an Administrative Remedy Procedure (A.R.P.) form on January 18, 2008. On January 31, 2008, Plaintiff went to the infirmary to see if he could get a pass allowing him to take his medication after his meal instead of before. Nurse Burks and Nurse Keiffer tried to get the pass for him, but Dr. Pacheco did not want to issue the pass. [Doc. #1, p.26]

Plaintiff would try to "sneak past security" after meals in order to get his medication. Sometimes he was successful and other times he was caught and ordered back to his Unit. [Doc. #1, p.26] Plaintiff states that, when he goes several days without his medication, he begins to have suicidal thoughts. On February 11, 2008, Mr. Lewis asked Plaintiff why he was not taking his medication every day. Plaintiff explained the situation to Lewis, who said that he would talk to the medical department. Plaintiff alleges that Lewis never talked to anyone on his behalf. [Doc. #1, p.26] However, according to Plaintiff, on February 20, 2008, he finally received a medical pass allowing him to eat prior to taking

his medication. He complains that the pass was issued on February 14, but he did not receive it until February 20.

***Violation of DOC Policy***

Plaintiff complains that Defendants Heyse, Steele, Womack, and Ramsay "processes, accepts, and rejects the A.R.P.'s that they want to when they feel like it."

Plaintiff filed an A.R.P. on October 31, 2007, which was denied at the first step level on November 20, 2007. Plaintiff's appeal was denied at the second step on January 30, 2008. Plaintiff states that Mona Heyse should have then reviewed the A.R.P. that Plaintiff filed on December 20, 2007, complaining of sexual harassment by Ben Otwell. However, Heyse put that A.R.P. aside and began the process on another one of Plaintiff's A.R.P. forms that was filed on January 18, 2008. Plaintiff alleges that Heyse violated D.O.C. policy by not processing the A.R.P. forms in the order in which they were received. [Doc. #1, p.30] Plaintiff submitted another A.R.P. on March 7, 2008 claiming that Heyse was violating his rights of access to courts and due process. [Doc. #1, p.31, 41]

Plaintiff also complains that he submitted an A.R.P. on November 28, 2007, regarding Defendant Shephard. Later that day, Shephard called Plaintiff over to discuss the matter. Plaintiff alleges that the defendants violated DOC policy by disclosing the content of the complaint to Shephard. [Doc. #1, p.29]

6

Plaintiff also references A.R.P. forms filed on September 15, 2008, July 2, 2008, November 1, 2008, November 10, 2008, December 17, 2008, December 30, 2008, and January 6, 2009.

Plaintiff complains that Ramsey knows that Heyse is addressing A.R.P. forms out of order and is letting Heyse get away with it.

## LAW AND ANALYSIS

### A. VIOLATION OF D.O.C. POLICY

Plaintiff complains that Heyse, Steele, Womack, and Ramsay did not follow D.O.C. policy in processing his numerous Administrative Remedy Procedure forms. Inmates do not have a constitutionally protected right to a grievance procedure.[1] "Congress requires inmates to exhaust their administrative remedies as are available... 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has no established grievance procedures *or fails to adhere to it*. 42 U.S.C. 1997e(b)." Bradford v. Kuykendall, 2005 U.S. Dist. LEXIS 32350, 2005 WL 1521016, 5 (E.

---

[1] See, e.g., Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 138 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are constitutionally mandated); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)(holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (holding prison grievance procedure does not confer substantive right on inmates; thus does not give rise to protected liberty interest under the Fourteenth Amendment); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (concluding regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (holding state prisoners have no legitimate claim of entitlement to grievance procedure); Reneau v. Dretke, 2006 U.S. Dist. LEXIS 6694 (D. Tex. 2006).

D. Tex.)(emphasis added). Plaintiff's claim is frivolous.

B.  **LOST PERSONAL PROPERTY**

Plaintiff claims that some of his personal property was not returned to him after a shakedown and search by the guards. He seeks compensation for the loss of several copies of court documents, police reports, and Bible certificates. The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under § 1983.

In Parratt v. Taylor, 451 U.S. 527, 544 (1981), the Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. Id., 451 U.S. at 536-37. The Due Process Clause does not embrace tort law concepts. Id. Even in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. Hudson v. Palmer, 468 U.S. 517 (1984); Davis v. Bayless, 70 F.3d 367 (5th Cir. 1995); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994).

In this case, Louisiana law provides Plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See La. Civil Code, Article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code, provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. See Charbonnet v. Lee, 951 F.2d 638 (5th Cir. 1992), cert. denied, 505 U.S. 1205 (1992).

C.  **MENTAL HEALTH CLAIMS**

Plaintiff complains that, as of January 1, 2008, he could no longer take his psychiatric medication on a regular basis because pill call was before lunch and, if he did not eat before taking the medication, he would experience dizziness and upset stomach. Plaintiff would skip his medication in the morning and then attempt to "sneak past security" in the afternoon to get his medication. Sometimes he was successful and other times he was caught and ordered back to his Unit. [Doc. #1, p.26] Finally, on February 20, 2008, he received a medical pass allowing him to eat prior to taking his medication.

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted

it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976)). The deliberate indifference can be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 467 F.3d at 104-105 (footnotes omitted)); see also Helling v. McKinney, 509 U.S. 25, 35-37 (1993).

Plaintiff has not presented facts indicative of deliberate indifference. He was prescribed psychiatric medication; and, while Plaintiff disliked the side effects experienced when taking the medication before eating, he was never deprived of his medication. Moreover, Plaintiff requested special permission to eat first and then take his medication, and his request was granted the next month. Finally, Plaintiff, by his own admission, violated prison rules countless times by sneaking past the guards to get his medication after eating. Clearly Plaintiff could have been

disciplined for these numerous incidents, and he was not. What Plaintiff has described with regard to his psychiatric medication is a de minimis inconvenience rather than an implication of his constitutional right. See eg., Ruiz v. El Paso Processing Center, 299 Fed. Appx. 369 (5th Cir. 2008). His claim is frivolous.

D. **MEDICAL CARE CLAIMS - RECURRING BOILS**

Plaintiff complains that he is being denied adequate medical care with respect to recurring boils, which Plaintiff believes are MRSA. No culture was ordered or performed; and, according to Plaintiff, no medication was provided. Plaintiff even, on occasion, drained his own boils/abscesses.

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components - one

objective and one subjective. <u>Farmer</u>, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. <u>Id.</u> at 834; <u>Lawson v. Dallas County</u>, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. See <u>Farmer</u>, 511 U.S. at 834; <u>Lawson</u>, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendant was aware of an excessive risk to plaintiff's health or safety, and yet consciously disregarded the risk. <u>Farmer</u>, 511 U.S. at 840-41; <u>Calhoun v. Hargrove</u>, 312 F.3d 730, 734 (5th Cir. 2002); <u>Stewart</u>, 174 F.3d at 534. The defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. <u>Farmer</u>, 511 U.S. at 842; <u>Harris v. Hegman</u>, 198 F.3d 153, 159 (5th Cir. 1999).

Plaintiff alleges that, on several occasions, he was exposed to a serious risk of harm because MRSA can spread and can be fatal. He alleges that the defendants' knew of the risk and still did not provide medical treatment. Plaintiff states that it was obvious that the recurring sores were not spider bites or infected hair follicles and that the sores required medical treatment. Because Plaintiff alleges deliberate indifference with respect to treating his recurring boils, an order of service of process will be issued

regarding those claims.[2]

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims - *except his claim regarding medical care of his recurring skin boils* - be **DISMISSED as frivolous**, and that the following defendants, against whom those claims were made, be **dismissed**: *Timothy Wilkinson, Angel A. Martin, Unit Manager Hardwell, Case Manager Triplette, Mona Heyse, Linda Steele, Linda Ramsay, Melody Turner, Lisa Coleman, Winn Correctional Center, Corrections Corporation of America, Medical Provider CCA, James LeBlanc, Richard Stalder, Louisiana Department of Corrections, Michelle Smith-Kennedy, and Mr. Lewis.*

**A Memorandum Order regarding service of process for the medical care claim will be issued forthwith.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within

---

[2] It is unclear from the pleadings and exhibits at this time, but Plaintiff's claims regarding treatment of the boils that occurred in 2007 may be barred by the statute of limitations.

13

ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this ___ day of _____, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE